1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| | |
|---|---|
| PATRICIA KIELTY AND SUSAN PATHMAN, *on behalf of themselves and all others similarly situated,*<br><br>                              Plaintiffs,<br><br>      v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>                              Defendant. | Case No.  14-cv-0541-BAS(BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 11) |

18

19      Plaintiffs Patricia Kielty and Susan Pathman (collectively "Plaintiffs")

20    commenced this putative class action on March 10, 2014 by filing a complaint

21    alleging Defendant Midland Credit Management, Inc. ("Midland") violated the

22    Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679–1679j; Fair Debt

23    Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p; and California's

24    Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§

25    1788–1788.3.   Midland now moves to dismiss the Complaint in its entirety

26    pursuant to Federal Rule of Procedure 12(b)(6).

27      The Court finds this motion suitable for determination on the papers

28    submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons set

forth below, this Court **GRANTS** Midland's motion to dismiss.

## I. BACKGROUND

Plaintiffs are California residents who claim they each received letters and brochures from Midland between April 13, 2012 and January 22, 2014. (ECF No. 1 ("Compl."), at ¶¶ 4–5, 12–19.) According to Plaintiffs, the letters and brochures contained statements representing that Midland could perform credit repair services for them. These statements included the following:

> Your past due balance . . . with FIRST CREDIT BANK OF DELAWARE is being reported to the credit reporting bureaus and remains a negative item on your credit report. . . . We can help you get back on track. . . . Once you make a payment, interest will stop being applied to your account[,] [y]our credit report will be updated with the payments you make[,] [and] [t]he account will appear on your credit report as Paid in Full after you've completed your payments[.]

(*Id.* at ¶ 12 (quoting an April 13, 2012 letter to Kielty).)

> Special offers are now available to help you resolve your unpaid Cit Bank account . . . [w]e can help you get back on track. . . . [W]e will not sue you for repayment of this obligation. This account may still be reported on your credit report as unpaid, and repaying the obligation may help toward improving your credit.

(*Id.* at ¶ 17 (quoting a February 13, 2013 letter to Pathman).)[1]

> Call 800-282-2644 and find out how we can help you.

(*Id.* at ¶ 13 (quoting *Why Paying Your Bills Is So Important to Your Credit Report* brochure ["Brochure"] sent to Kielty and Pathman).)[2]

---

[1] The Complaint alleges that Midland sent letters materially identical to the February 2013 letter to Ms. Pathman on March 28, 2013 and July 12, 2013. (Compl. at ¶ 19.)

[2] According to Plaintiffs, Midland mailed the Brochure to Ms. Pathman with the February 2013 letter and Ms. Kielty with the April 2012 letter. (*Id.* at ¶ 13, 18.) The Brochure explains the importance of having a good credit report, explains how a credit score is calculated and how payment history impacts the

[O]nce you've completed your agreed-upon payments to settle this account, your credit report will be updated as "Paid in Full"!

(*Id.* at ¶ 15 (quoting March 28, 2013 and July 12, 2013 letters to Kielty).[3])

Ms. Kielty also alleges Midland sent her a letter on January 22, 2014, thanking her for a previous payment on her account and stating the following:

Your [payment] has proven you are interested in resolving this debt. . . . [W]e would like to offer you the opportunity to resolve your account.   To re-establish a positive payment history with us, the following options are available[.]

(*Id.* at ¶ 16.)

Plaintiffs commenced this suit against Midland on behalf of themselves and "[a]ll consumers to whom Defendant mailed, within five years preceding the date of the complaint, [the Brochure] and/or a letter that includes a picture of [the Brochure]."  (*Id.* at ¶ 21.)  Plaintiffs claim Midland's Brochure violated the CROA, as Midland is allegedly a credit repair organization, by failing to provide a mandated consumer-rights notice and contract, by making false and misleading representations, and by advising Plaintiffs to make untrue and misleading statements.  (*Id.* at ¶¶ 50, 60–62, 65.)  Ms. Kielty further alleges Midland received a monetary amount from her before performing credit repair services, in violation of the CROA.  (*Id.* at ¶ 58.)  Finally, Plaintiffs claim Midland, acting as a debt collector, violated the FDCPA and consequently, California's Rosenthal Act by making false and deceptive representations.  (*Id.* at ¶¶ 68–70, 73.)

Plaintiffs seek actual damages for CROA violations, statutory damages under the FDCPA and Rosenthal Act, punitive damages at the Court's discretion,

---

calculation, and repeats the letter's statement that "[Midland] can help you get your finances back on track."  (*Id.* at ¶ 13.)

[3]     Plaintiffs allege Midland again mailed Ms. Kielty letters and brochures with this additional statement, as well as "nearly identical" statements to the April 13 letter on March 28, 2013 and July 12, 2013.  (*Id.* at ¶ 14.)

1  as well as return of amounts paid, injunctive relief, fees, and interest.  (*Id.* at ¶ 74.)

2  Midland now moves to dismiss the action.  (ECF No. 11 ("Mot.").)

## II.    STATEMENT OF LAW

4      A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

5  Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed.

6  R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The

7  court must accept all allegations of material fact pleaded in the complaint as true

8  and must construe them and draw all reasonable inferences from them in favor of

9  the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337–38 (9th

10  Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain

11  detailed factual allegations; rather, it must plead "enough facts to state a claim to

12  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

13  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

14  that allows the court to draw the reasonable inference that the defendant is liable

15  for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

16  *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are merely

17  consistent with a defendant's liability, it stops short of the line between possibility

18  and plausibility of entitlement to relief."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at

19  557) (internal quotations omitted).

20      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

21  relief' requires more than labels and conclusions, and a formulaic recitation of the

22  elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (quoting

23  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A court need not accept "legal

24  conclusions" as true.  *Iqbal*, 556 U.S. at 678.  Despite the deference the court must

25  pay to the plaintiff's allegations, it is not proper for the court to assume that "the

26  [plaintiff] can prove facts that [he or she] has not alleged or that defendants have

27  violated the . . . laws in ways that have not been alleged."  *Associated Gen.*

28  *Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002)). "However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc.*, 896 F.2d at 1542 n.19. The court may also consider documents specifically identified in the complaint whose authenticity is not questioned by the parties. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statute on other grounds); *see also Branch*, 14 F.3d at 453–54. The court may consider such documents so long as they are referenced in the complaint, even if they are not physically attached to the pleading. *Branch*, 14 F.3d at 453–54; *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (extending rule to documents upon which the plaintiff's complaint "necessarily relies" but which are not explicitly incorporated in the complaint). Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Fecht*, 70 F.3d at 1080 n.1. The court also considers materials of which it takes judicial notice. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint it dismisses. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The court may deny leave to amend, however, when "[it] determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.,* 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

///

///

///

## III.   DISCUSSION

### A.   CROA Claims

In Counts I through V, Plaintiffs allege Midland violated Sections 1679b, 1679c, and 1679d of the CROA.  (Compl. at ¶ 74(e).)  Midland moves to dismiss these counts on the ground that it is not a credit repair organization and thus does not fall within the mandates of the CROA.  (*See* Mot.)  Section 1679b of the CROA prescribes certain practices by any "person" or "credit repair organization"; similarly, Sections 1679c and 1679d mandate disclosures and regulate contracts made by "credit repair organizations."[4]  *See* 15 U.S.C. §§ 1679a–1679d.  Thus, to survive the present motion, Plaintiffs must plead facts sufficient to plausibly show Midland is such an organization.  *See Stout v. FreeScore, LLC*, 743 F.3d 680 (9th Cir. 2014) (determining whether a company is a credit repair organization at the motion to dismiss stage).

The CROA defines a "credit repair organization" as follows:

> [A]ny person who uses . . . the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--
>      (i) improving any consumer's credit record, credit history, or credit rating; or
>      (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i) . . . .[5]

---

[4]      Plaintiffs do not contest that Section 1679b's prohibitions against certain actions by any "person" apply to one qualifying as, or affiliated with, a credit repair organization.  *See, e.g.*, *Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1062–63 (D. Haw. 2011) (dismissing Section 1679b(a)(1) claim against defendant since it was not "a credit-repair organization"); *Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906, 910 (N.D. Cal. 2005) (considering CROA claims against defendants, as defendants conceded they were credit repair organizations, which are liable under 15 U.S.C. 1679b(a)'s prohibitions against certain practices by any "person").

[5]      This definition excludes nonprofits, depository institutions, or "any creditor (as defined in section 1602 of this title) . . . to the extent the creditor is

14cv0541

15 U.S.C. § 1679a(3)(A).   To fall within the definition, a person need not actually provide credit repair services; it "need only *represent* that it can or will sell, provide, or perform a service for the purpose of providing advice or assistance to a consumer with regard to improving a consumer's credit record, credit history, or credit rating." *Stout*, 743 F.3d at 685 (emphasis in original).   In interpreting a person's advertisements, the Court looks to the "'overall net impression' of the subject advertisement to determine what message a viewer may reasonably ascribe to it." *Id.* (quoting *FTC v. Gill*, 265 F.3d 944, 956 (9th Cir. 2001)).

The Ninth Circuit's recent decision in *Stout*, in which it found an online provider of credit scores, reports, and consumer credit information to be a "credit repair organization," is instructive.   *See* 743 F.3d at 681.   In *Stout*, the provider, FreeScore, went beyond warning consumers about the harm caused by a poor credit report, to charging them initial and monthly fees in return for providing merged credit reports and alerting them to changes to their reports.   *Id.* at 685-86. In reversing the district court, the Ninth Circuit reasoned that FreeScore's online and television advertisements went "beyond merely providing information about one's credit" to recommending "a course of action to consumers." *Id*. at 686.   In other words, "FreeScore represents both explicitly and implicitly that its services can improve or assist in improving a consumer's credit record, history, or rating." *Id*.   Thus, the Ninth Circuit found that the "overall net impression" communicated by FreeScore was that its services would improve consumers credit.   *Id*. at 686-87 ("The overall net impression communicated by FreeScore is that in order to 'repair a damaged credit score,' the 'best solution' is to 'utilize[e] services like credit monitoring,' which 'can have an immediate effect on your credit score.'").

Unlike FreeScore, Midland does not offer any service for the purpose of providing assistance or advice to improve consumers' credit record in return for

assisting the consumer to restructure any debt owed by the consumer to the creditor."  15 U.S.C. § 1679a(3)(B).

payment.  Midland does not represent that its services can improve or assist in improving a consumer's credit record, history, or rating.  Midland, as a debt collector, is simply seeking the repayment of debts owed and in doing so encourages the repayment of debts owed to it and acknowledges the benefits of repayment.  Seeking the repayment of a debt and utilizing "the potential of a lower credit score as motivation to encourage [a person] to pay the debt" does not make a person a credit repair organization.  *See Spencer v. Ariz. Premium Fin. Co., Inc.*, No. 06-cv-160S, 2011 WL 4473178, at *4 (W.D. N.Y. Sept. 26, 2011); *see also Dauval v. Preferred Collection & Mgmt. Servs., Inc.*, No. 11cv2269, 2012 WL 5928622, at *4-5 (M.D. Fla. Nov. 26, 2012) (holding that a debt collector seeking to collect a debt and offering to restore the debtor's credit in exchange for payment on the debt was not a credit repair organization).[6]  Rather, any benefit to Plaintiffs' credit score "would simply be an indirect, collateral effect to the settlement of [their] debt."  *Id.*

Plaintiffs recount Midland's statements, including its so-called solicitation to "Call 800-282-2644" and its representation that it "can help you get back on track," as evidence that Midland implicitly represented it could improve or provide advice on improving Plaintiffs' credit records in return for payment.  (ECF No. 14 ("Opp."), 7:7–8:20.)  These statements fall short, however, of plausibly implying or leaving the net overall impression that Midland was selling credit-improvement services or advice.  As the Complaint itself states, Midland was "directly or indirectly attempting to collect a debt from Plaintiffs."  (Compl. at ¶ 10.) "Collection agencies, insofar as they do not seek compensation for credit repair services, do not engage in the type of conduct which Congress sought to regulate in enacting the CROA."  *Oslan v. Collection Bur. of Hudson Valley*, No. Civ.A. 01-

---

[6]   In light of *Iqbal* and *Twombly*, the Court does not find *Bigalke v. Creditrust Corp.*, 162 F.Supp.2d 996 (N.D. Ill. 2001) to be persuasive.  The mere allegation that a "person" is a credit repair organization is insufficient.

2173, 2001 WL 34355648, at *1 (E.D. Penn. Dec. 13, 2001) (collection letters exhorting debtors to "TAKE ADVANTAGE OF THIS GREAT OPPORTUNITY TO HELP RESTORE YOUR CREDIT" did not make a debt collection agency a credit repair organization).

There is no allegation in the Complaint that Midland offered services or advice for any additional fee. *Cf. Reynolds v. Credit Solutions, Inc.*, 541 F.Supp.2d 1248, 1249 (N.D. Ala. 2008) (finding a debt settlement company which charges a fee of 15% of the total amount of debt to be reduced to be a credit repair organization), vacated by *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249 (11th Cir. 2009) (holding the question of whether defendant is a credit repair organization is a question for the arbitrator); *Kennedy v. CompuCredit Holdings Corp*., 9 F.Supp.3d 1314, 1315, 1321 (M.D. Fla. 2014) (finding the plaintiff plausibly alleged the defendant was a credit repair organization where the defendant offered debtor plaintiff an opportunity to pay down a debt while at the same time qualifying for a new credit card through its Fresh Start Solution Program, thus giving plaintiff the "net overall impression" that "participation in the Program will provide a 'Fresh Start' to improve any consumer's credit record, credit history, or credit rating"). Rather, the Complaint alleges Midland was merely seeking repayment of debts owed to it, or a potentially lesser amount, if it could work out a plan with Plaintiffs. (*See* Compl. at ¶17.)   Given the foregoing, the Court finds that Plaintiffs have failed to plausibly allege that Midland is a credit repair organization.

For these reasons, the Court **GRANTS** Midland's motion to dismiss Plaintiff's Section 1679 claims with leave to amend.

### B.    FDCPA and Rosenthal Act Claims

Midland also moves to dismiss Count VI of the Complaint, which alleges Midland violated the FDCPA.  To state a claim under the FDCPA, a plaintiff must allege "1) that he [or she] is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the defendant is a debt collector; and 4)

that the defendant violated one of the provisions of the FDCPA." *Freeman v. ABC Legal Servs.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011).  The purpose of the FDCPA is to prevent debt collectors from resorting to duplicitous or abusive collection tactics.  *See* 15 U.S.C. § 1696(e).  Given its remedial nature, courts must construe the FDCPA broadly in order to effect its purposes.  *Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

The FDCPA bars debt collectors from using "false representation[s] or deceptive means to collect or attempt to collect any debt."[7]  15 U.S.C. § 1692e(10).  "[I]t is well established that '[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"  *Gonzales v. Arrow Fin. Servs.*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d. Cir. 2006)).  Plaintiffs allege Midland made the following three false or deceptive representations:

- "[F]alsely and misleadingly represent[ing] that [Midland] could or would legally report Plaintiff's obligations as 'Paid in Full'";
- "imply[ing] . . . negative information of Plaintiff's credit reports could be permanently removed when it cannot"; and
- "falsely and deceptively represent[ing] that 'interest will stop being added to your account.'"

(Compl. at ¶¶ 68–70.)[8]

In evaluating claims of deception, courts take the perspective of the "least sophisticated" debtor.  *See Clark*, 460 F.3d at 1171 ("[W]e seek to ensure that even the least sophisticated debtor is able to understand, make informed decisions about,

---

[7]   The FDCPA defines a "debt collector" as one using "the mails in any business the principal purpose of which is the collection of any debts, or [one] who regularly . . . attempts to collect . . . debts owed or due . . . another."  15 U.S.C. § 1692a(6).   Neither party disputes that Midland is a debt collector within the meaning of the statute.  (*See* Opp. at 20 n.2.)

[8]   A Section 1692e violation also creates liability under the Rosenthal Act.  Cal. Civ. Code § 1788.17.

and participate fully and meaningfully in the debt collection process."); *see also Caudillo v. Portfolio Recovery Assocs.*, No. 12cv200(IEG), 2013 WL 4102155, at *2 (S.D. Cal. Aug. 13, 2013) ("'In this circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law,' 'requir[ing] an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication.'" (quoting *Gonzales*, 660 F.3d at 1061)).

### 1. "Paid in Full" Representations

Midland's letters to Plaintiffs state that once all agreed-upon payments have been received, their accounts will be considered "Paid in Full" and "the three major credit reporting agencies will be updated accordingly."[9]  (Compl. at ¶ 68, Exs. D-F.)  Plaintiffs allege these statements, offering to report the accounts as "Paid in Full," rather than "Settled," are "false, deceptive, and misleading," since the Fair Credit Reporting Act ("FCRA") forbids furnishing inaccurate information to a consumer reporting agency.  (Opp. at 22:6–14 (quoting FCRA, 15 U.S.C. § 1681s–2(a)(1)(A).)

Midland contends it could report the debt as "Paid in Full," regardless of whether the consumers paid a lesser amount by agreement.  Midland further contends that Plaintiffs fail to provide any support for their assertion that "a furnisher may not report a settled debt as 'Paid in Full'" under the FDCPA.  (Opp. at 22:16–18.)  The Court agrees that neither the FDCPA nor the FCRA explicitly bar a debt collector from reporting a "settled" debt as having been fully satisfied.

Plaintiffs cite two unpublished cases to show that "major financial institutions have interpreted this provision to mean . . . a furnisher may not report a settled debt as 'Paid in Full.'"  (*See id.* at 22:15–23:11.)  Neither case, however,

---

[9]  Additional letters state that Plaintiffs "credit report will be updated as 'Paid in Full'" or "[t]he account will appear on your credit report as Paid in Full after you've completed your payments."  (Compl. at Exs. A, C, H-J.)  At least two of the letters received, however, include a disclaimer that "[t]his account may still be reported on your credit report as unpaid."  (Compl. at Exs. E, F.)

supports the broader proposition that the substantive law bars Midland from reporting debts it settled with consumers as "Paid in Full." *See Schiano v. MBNA*, No. 05–1771(JLL), 2013 WL 2452681, at *5 (D.N.J. Feb. 11, 2013) (noting in dicta that the bank and consumers agreed the bank could not report that the debt was paid in full because it was settled for less than the amount owed), *reconsideration denied*, No. 2013 WL 2452682 (D.N.J. Apr. 12, 2013), and *aff'd*, 2013 WL 2455933 (D.N.J. June 3, 2013); *Grossman v. Barclays Bank Del.*, No. 12-6238(PGS), 2014 WL 647970, at *3 (Feb. 19, 2014) (reciting bank's representation that reporting debts as settled followed the Credit Resource Reporting Guide ("CRRG")); *see also In re Jones*, No. 09–14499(BFK), 2011 WL 5025329, at *3 (Bankr. E.D. Va. Oct. 21, 2011) (finding the CRRG consists of "guidelines only" and is not "a national, legally enforceable standard for the reporting of debts"). Thus, the Court finds the Complaint fails to make a plausible allegation that Midland's representations that Plaintiffs' accounts will be considered "Paid in Full" and reported as such to the three major credit reporting agencies violates the FDCPA.

## 2.    Removal of Negative Information

Plaintiffs further allege Midland falsely implied negative information could be removed from their credit reports.[10]  Where a claim of deception rests entirely on the text of the communication, it may be resolved at the motion to dismiss stage "if there was nothing deceptive-seeming about the communication." *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 776–77 (7th Cir. 2007). "Although established to ease the lot of the naive, the [least sophisticated debtor] standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their

---

[10]    Plaintiffs fail to defend either this claim or the subsequent claim regarding interest accrual in their opposition to the motion to dismiss.  (*See* Opp. at 19:3–24:21.)

entirety."  *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008).

Here, having considered both the excerpts cited in the Complaint and the letters and Brochure attached to it,[11] the Court finds that the least sophisticated debtor would not interpret the letters, which state that each past due balance "remains a negative item on your credit report" and settling your debts can "get your finances back on track"; and the Brochure, which informs consumers of the negative impact to their credit score of carrying large amounts of debt, to be offers to erase existing negative history.  Midland promises nothing more than reporting any settled debt as fully paid.  Accordingly, the Court finds the Complaint does not plausibly allege Midland falsely implied negative information could be permanently removed from Plaintiffs' credit reports.

### 3.   Halting Interest Accrual

Finally, Plaintiffs allege that the representation that interest would stop being added to their accounts once payments have been made is false or deceptive. (Compl. at ¶ 70.)  Midland argues there is no basis for this allegation.  (Mot. at 18:15–18.)  The Court agrees.  Even if all allegations of material fact are taken as true, Plaintiff's Complaint falls short of asserting any facts regarding Midland's ability to collect interest as the holder of the debt.  While Plaintiffs allege that the original creditors waived their rights to collect interest, there is no allegation that Midland could not collect interest on the accounts.  Thus, the Court finds Plaintiffs' failure to plead facts beyond the allegation that "interest could [not] have been legally added to [the accounts]" merits dismissal.

For the above-stated reasons, Midland's motion is **GRANTED** with respect to Count VI of the Complaint.  Plaintiffs predicate their Rosenthal Act claims in

---

[11]   The Court may consider the full text of documents attached to the Complaint, even when the Complaint quotes only selected portions.  *See Branch*, 14 F.3d at 453–54.

Count VII on Plaintiffs' FDCPA claims, as, for the purposes of this case, violations of the FDCPA constitute violations of the Rosenthal Act.  *See Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012).   Accordingly, the Court also **GRANTS** Midland's motion with respect to Count VII.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 11) is **GRANTED** as to all claims, with leave to amend.  If Plaintiffs choose to file an amended complaint, they must do so no later than <u>March 2, 2015</u>.

**IT IS SO ORDERED.**

**DATED:  January 28, 2015**

**Hon. Cynthia Bashant**
**United States District Judge**

14cv0541